UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DONALD LOGAN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:24-cv-02169-JPH-TAB |
| | ) |
| DONALD EMERSON, | ) |
| | ) |
| Respondent. | ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Petitioner Donald Logan seeks a writ of habeas corpus under 28 U.S.C. § 2254. He challenges prison disciplinary proceeding IYC 24-08-002810, in which he was found guilty of possessing dangerous or deadly contraband and was sanctioned with the loss of 180 days earned credit time and a credit class demotion. Dkt. 1 at 1. Mr. Logan challenges the sufficiency of the evidence used to sanction him. *Id.* at 1–2. For the reasons explained below, the disciplinary proceeding did not violate Mr. Logan's due process rights, his habeas petition is **denied,** and the case is **dismissed with prejudice**.

# I.
# Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance

1

written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974).

## II.
## The Disciplinary Proceeding

On August 8, 2024, Officer O. Talabi charged Mr. Logan with offense A-106, possessing dangerous or deadly contraband, and wrote a conduct report. The conduct report states:

> On 8/07/2024 at approximately 11:30pm I Officer O. Talabi and Officer S. Mbah were conducting a security pipe round in D-Unit when we observed Incarcerated Individual Logan Donald #902906 (D3 – 6L) acting suspiciously on his bed. I ordered him to step out from his bed which he complied. We conducted a search around his bed and discovered two (2) improvised metal weapons under the mattress of I/I Logan. The contraband was confiscated and taken to shift office for photograph and deposited to I/I Locker #263. I/I Logan was issued a "Notice of Confiscated Property" which he agreed to sign. He was informed he would receive a conduct report for "Possession of Dangerous/Deadly Contraband/Property 106-A."

Dkt. 10-1 (errors in original). Prison officials took pictures of the contraband and filed a confiscation report. Dkt. 10-2; dkt. 10-3. Officer Mbah completed a witness statement:

> On 8/7/2024 at approximately 11:30 PM I, Officer S. Mbah and Officer O. Talabi were in the C-Unit bed area conducting a search on I/I Logan, Donald #902906 bed area and property. During the search two improvised weapons were discovered inside the mattress belonging to I/I Logan. The items were confiscated with no further contraband discovered.

Dkt. 10-4.

The screening officer notified Mr. Logan about the charge on August 9, 2024, giving him copies of the screening report and the conduct report. Dkt. 10-5. Mr. Logan pled not guilty and requested that Officer C. Jones and Michael Brown, another incarcerated person, provide witness statements. *Id.* In his witness statement, Michael Brown answered, "Yes I did," to Mr. Logan's question about whether Mr. Brown put the weapon in his mattress while Mr. Logan was at school. Dkt. 10-8. Officer C. Jones affirmed in her witness statement that she had given Mr. Logan the mattress with the cover already torn and opened. Dkt. 10-9. Mr. Logan also requested "video evidence review of [his] bed location on Tuesday 8/6/2024 or Wednesday 8/7/2024 at 7:00a.m. through 11:00a.m.," claiming that this would show Mr. Brown placing the contraband under this mattress. Dkt. 10-5 (errors in original).

An officer reviewed video footage of Mr. Logan's cell on August 6, 2024, and August 7, 2024, between 7:00 a.m. and 11:00 a.m. Dkt. 10-10. The officer also reviewed footage of the officers searching Mr. Logan's bed and finding the contraband at around 11:27 p.m. on August 7, 2024. *Id.* The officer drafted a summary of the footage and mailed a copy to Mr. Logan. *Id.*

A disciplinary hearing officer ("DHO") held a hearing on August 15, 2024. Dkt. 1 at 1. Mr. Logan commented that the weapon was not his and that another inmate admitted to putting it under his mattress the following day. Dkt. 10-7. He also noted that "[a]nybody could have put that right there, due to it being open from head to toe." *Id.*

3

Based on the "[conduct] report, video review and picture of evidence," the DHO found Mr. Logan guilty of possessing dangerous or deadly contraband. *Id.* at 1. The DHO noted that the report stated that Mr. Logan was searched because of "suspicious activity" and that staff found two weapons after searching his mattress. *Id.* The picture evidence showed that only one weapon was found so the DHO did not consider Officer Mbah's statement, which stated that two weapons were found. *Id.* Furthermore, because Mr. Brown did not have a pattern of possessing contraband and the video evidence did not show him tampering with Mr. Logan's mattress, the DHO chose to not believe Mr. Brown's witness statement saying that he placed the weapon in the mattress. *Id.* He noted that it is "also highly likely" that Mr. Brown "was forced [to] make the statement that he gave for unknown reasons." Lastly, the DHO explained that the video shows officers removing Mr. Logan's second mattress, which he was not authorized to have. *Id.* This suggested to him that Mr. Logan was using the mattress to "conceal evidence." *Id.* Thus, the DHO found Mr. Logan guilty of violating A-106 and sanctioned him by demoting his class level and deducting 180 days of earned credit time. *Id.* at 2.

Mr. Logan's appeals were denied. Dkt. 10-11; dkt. 10-12. Mr. Logan then brought this petition for a writ of habeas corpus.

### III.
### Analysis

Mr. Logan raises two grounds challenging his disciplinary conviction. First, he argues that Mr. Brown "took ownership of the weapon and stated, 'he

4

placed it in my mattress without my knowledge while I was in school.'" Dkt. 1 at 3.  Second, Officer C. Jones stated that "she gave me the mattress with the cover already ripped open." *Id.*  Because Mr. Logan's bed is in a common area, anyone could have put something in his mattress without him knowing it.  *Id.*  Essentially, Mr. Logan argues that the DHO did not base his conviction on sufficient evidence.  The Respondent, in turn, argues that the DHO based his decision on sufficient evidence; he is not required to believe the Petitioner or every witness to satisfy the requirements of due process. The Court agrees with the Respondent.

A prison disciplinary proceeding satisfies the due process requirement when there is "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst.*, 472 U.S. at 454; *Ellison*, 820 F.3d at 274 (the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary").  The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002).  "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board." (internal quotation omitted)).  Importantly, the "'some evidence' standard" is "a 'meager threshold,'" and once courts find that "some evidence" supports the disciplinary

5

conviction, the inquiry ends. *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939).

Here, the DHO had a sufficient basis for finding that Mr. Logan possessed the contraband. First, the DHO reviewed the video footage and did not see Mr. Brown or anyone else tampering with Mr. Logan's mattress. Dkt. 10-7 at 1. The DHO stated that "Brown['s] statement was considered, but this is believed not to be true based on the video review." *Id.* Moreover, he reasoned that Mr. Brown did not have a pattern of possessing weapons. Thus, he concluded that it was "highly likely" that Mr. Brown was forced to make the statement. *Id.* Even though Mr. Logan argues that the DHO *should have* concluded that the contraband belonged to Mr. Brown based on his witness statement claiming ownership, due process does not require the DHO to come to the best or most logical conclusion. The Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)). Here, the video evidence showing that no one tampered with the mattress provides some evidence that Mr. Brown's statement was false so the Court's inquiry must stop. *See Jones*, 637 F.3d at 849.

Second, the DHO's inference that Mr. Logan was guilty of possessing contraband based on the video footage showing that it was found in his mattress conforms with the Disciplinary Code for Adult Offender's ("DCAO") definition of possession as ". . . in one's quarters. . ." *See* Dkt. 10-14 at 6, ¶ LL;

6

*see also Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992) ("If . . . only two inmates had access to the vent, there is a 50% probability that each inmate is guilty; a 50% probability amounts to 'some evidence.'"); *Bivins v. Williams*, 2023 WL 180051, at *2 (7th Cir. Jan. 13, 2023) (reasoning that the "some evidence" standard was satisfied when the contraband was found in the common area of the petitioner's cell to which he had undisputed access and where only a few inmates had access). Thus, the report shows that the DHO's decision was not arbitrary; there is some evidence connecting Mr. Logan's conviction to the video footage and conduct report showing that the contraband was in his mattress.

    Last, the DHO satisfied the "some evidence" requirement because he based his finding of guilt on evidence in the record that led him to conclude that Mr. Logan had "awareness" of the contraband in his mattress. Specifically, the conduct report stated that he was searched for acting suspiciously and the video showed that he had a second unauthorized mattress. Dkt. 10-7. As mentioned above, the DHO's conclusion regarding Mr. Logan's awareness does not have to be the only conclusion available; it must be based on "some evidence" in the record. Here, the DHO's rationale for finding Mr. Logan guilty satisfies this requirement.

    Because the "some evidence" standard was met, the Court will not find that the disciplinary proceeding deprived Mr. Logan of his earned credit time without due process.

## IV.
## Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action. Accordingly, Mr. Logan's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 5/30/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DONALD LOGAN
902906
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Inmate Mail/Parcels
727 MOON ROAD
PLAINFIELD, IN 46168

All electronically registered counsel

8